United States District Court
Southern District of Texas
**ENTERED**
January 21, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DEBRA LINDSEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:20-CV-303** |
| | § | |
| **ANDREW SAUL, Commissioner of Social** | § | |
| **Security,** | § | |
| | § | |
| **Defendant.** | | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the Court[1] is Plaintiff Debra Lindsey's ("Plaintiff") Motion for Summary Judgment (Dkt. No. 11) and Defendant Andrew Saul's ("Commissioner") Motion for Summary Judgment (Dkt. No. 13). The Court has considered the motions, all other relevant filings, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Commissioner's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and the action be **DISMISSED** with prejudice.

**I.     BACKGROUND**

On January 21, 2020, Plaintiff timely filed this action for judicial review of the Social Security Administration's ("SSA") final decision on Plaintiff's claim for disability insurance benefits under Title II and XVI of the Social Security Act.[2] On August 19, 2016, Plaintiff filed an application for benefits claiming an inability to work since January 1, 2015, due to fibromyalgia

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 12.)

[2] *See* Dkt. No. 1; Dkt. No. 9-6 at 2–7.

and arthritis in her right hip, arthritis in her hips, scoliosis, fibromyalgia, depression, and post-traumatic stress disorder ("PTSD").[3] The SSA found Plaintiff was not disabled at the initial level of review in February 2017 and again, upon reconsideration, in June 2017.[4] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[5]

On November 20, 2018, the ALJ conducted a hearing.[6] The ALJ heard testimony from Plaintiff and Jerry Hildrey, a vocational expert ("VE"). On February 19, 2019, the ALJ issued a decision denying Plaintiff's applications for disability benefits.[7] The ALJ found, "[t]he claimant had not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision . . . ."[8] Plaintiff appealed the ALJ's decision to the SSA's Appeals Council.[9] On November 7, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision.[10]

The ALJ's decision represents the Commissioner's final decision in Plaintiff's case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). Following the Appeals Council's denial, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g).[11]

## II.   LEGAL STANDARD

---

[3] *See* Dkt. No. 9-6 at 2–7; Dkt. No. 9-4 at 2–3; Dkt. No. 9-7 at 12.
[4] *See* Dkt. No. 9-5 at 4–5, 7–12.
[5] *Id.* at 13.
[6] *See* Dkt. No. 9-3 at 32–62.
[7] *See id.* at 14–26.
[8] *Id.* at 26.
[9] Dkt. No. 9-5 at 95–96.
[10] *See* Dkt. No. 9-3 at 2–4.
[11] Dkt. No. 1.

The Court's review of the Commissioner's final decision on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. In its analysis, the Court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*,

595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Rule 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex. Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

## III. DISCUSSION

"A claimant bears the burden of proving that he or she suffers from a disability." *Perez*, 415 F.3d at 461. The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity means "work activity involving significant physical or mental abilities for pay or profit." *Perez*, 415 F.3d at 461 (quoting *Newton*, 209 F.3d at 452).

In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment

prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520). While the claimant maintains the burden of proof for the first four steps, the burden shifts to "the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Perez*, 415 F.3d at 461. "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton*, 209 F.3d at 453) (internal quotations omitted).

"A finding that a claimant is disabled . . . at any point in the five-step review is conclusive and terminates the analysis." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). However, if no such finding can be made at any one step, the Commissioner moves on to the next step. 20 C.F.R. § 404.1520(a). Before moving from step three to step four, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The Commissioner uses the claimant's RFC at steps four and five to determine if the claimant can still do his past relevant work and determine whether the claimant can adjust to any other type of work. *Id.* (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ addressed all five steps of the sequential process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, the alleged onset date.[12] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, arthritis of the hand, fibromyalgia, depression, and PTSD.[13] At step three, the ALJ

---

[12] Dkt. No. 9-3 at 16.
[13] *Id.*

found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[14] The ALJ found Plaintiff had the RFC to perform the exertional demands of a modified range of light work as defined in the Commissioner's regulations.[15] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[16] At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed—such as laundry folder, cleaner, and assembler—and therefore, Plaintiff was not disabled as defined under the Social Security Act.[17]

Plaintiff moves to reverse or remand the ALJ's decision based on five issues.[18] Plaintiff argues that: (1) the ALJ erred by failing to determine Plaintiff's mental impairments equaled a listing; (2) the ALJ incorrectly determined Plaintiff's RFC limitations and the possible jobs Plaintiff could perform; (3) the ALJ's RFC determination is not based on substantial evidence; (4) the ALJ committed reversible error by mechanically applying the age categories; and (5) the ALJ erred in her consideration and weighing of the medical opinions and State agency consultant opinions.[19]

Conversely, Commissioner argues that the ALJ's decision should be upheld because: (1) the ALJ's step three findings were proper; (2) the ALJ properly determined Plaintiff's RFC; (3)

---

[14] *Id.* at 17.
[15] *Id.* at 19.
[16] *Id.* at 24.
[17] *Id.* at 25–26.
[18] Dkt. No. 11 at 2.
[19] *See id.*

the ALJ properly relied on VE testimony at step five; and (4) the ALJ properly characterized Plaintiff's age classification as a person closely approaching advanced age.[20]

###   a.   The ALJ Did Not Err In Determining Plaintiff's Impairments Did Not Satisfy Listing 12.04.

Plaintiff argues that the ALJ erred by finding that Plaintiff's mental impairments do not equal Listing 12.04 for depressive disorder.[21] Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff's severe impairments do not, individually or in combination, meet or equal a Listing.[22] The Court agrees with Commissioner.

Plaintiff has the burden of establishing that her impairment meets or equals the criteria for presumptive disability described in the Listings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* In order to qualify for benefits by showing that an unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, a plaintiff "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (emphasis in original). Determining whether an applicant met or equaled a Listing is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

While the ALJ considered multiple Listings, Plaintiff's argument specifically focuses on Listing 12.04 for depressive, bipolar, and related disorders. There are two ways to satisfy Listing 12.04. Under the first option, a plaintiff must have medical documentation of a depressive or

---

[20] *See* Dkt. No. 13-1 at 3, 8, 18, 23.
[21] Dkt. No. 11 at 8.
[22] *See* Dkt. No. 13-1 at 3.

bipolar disorder (paragraph A) and extreme limitation[23] of one, or marked limitation[24] of two, areas of mental functioning (paragraph B). The mental functioning areas include: (1) understanding; remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Under the second option, a plaintiff must have medical documentation of a depressive or bipolar disorder (paragraph A) and a mental disorder that is "serious and persistent"[25] (paragraph C).

The Court will begin its analysis—as the ALJ did—by first considering paragraph B.[26]

### i. Listing 12.04, Paragraph B

The Court agrees with Commissioner that there is substantial evidence to support the ALJ's decision regarding paragraph B. The ALJ considered all four of the mental functioning areas and found no evidence of a marked or extreme limitation.[27]

 Understanding, remembering, or applying information, refers to the abilities to learn, recall, and use information to perform work activities. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §

---

[23] Extreme limitation means "[y]ou are not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e).

[24] Marked limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).

[25] "Serious and persistent" is met through "a medically documented history of the existence of the disorder over a period of at least 2 years" and evidence of both: (1) "[m]edical treatment, health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder;" and (2) "[m]arginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(c).

[26] The ALJ's decision is silent as to paragraph A under Listing 12.04, but Plaintiff alleges that her depression diagnosis satisfies paragraph A. (See Dkt. No. 11 at 9.) Because the Court ultimately finds substantial evidence supports the ALJ's decision regarding paragraph B and C of Listing 12.04, it need not consider paragraph A.

[27] Dkt. No. 9-3 at 18–19.

12.00(E)(1). There, the ALJ found Plaintiff has a moderate[28] limitation as Plaintiff requires "no reminders to go places, perform her personal care, or take her medications," can follow written and spoken instructions, and possesses an average fund of knowledge.[29] The ALJ based her findings on two function reports authored by Plaintiff, a third party function report from Plaintiff's stepmother, a mental status examination ("MSE") from Dallas Metrocare, and a report from Dr. Diane Allen ("Dr. Allen"), a psychological consultative examiner.[30]

Interacting with others refers to the abilities to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(2). There, the ALJ found Plaintiff has a moderate limitation as Plaintiff gets along with authority figures and alternates living between her stepmother and her boyfriend.[31] The ALJ based her findings on Plaintiff's function reports, a third party function report from Plaintiff's stepmother, and Dr. Allen's report.[32]

Concentrating, persisting, or maintaining pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(3). There, the ALJ found Plaintiff has a moderate limitation as Plaintiff is able to watch television, pay attention for ten minutes, and finish whatever she starts.[33] The ALJ based her findings on Plaintiff's function reports, a third party function report from Plaintiff's stepmother,

---

[28] Moderation limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).
[29] Dkt. No. 9-3 at 18.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

and Dallas Metrocare's MSE.[34]

Adapting or managing oneself refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). There, the ALJ found Plaintiff has a mild[35] limitation as Plaintiff is able to care for pets, go outside several times per day alone, drive, ride in a car, shop for groceries once a week, and count change.[36] Plaintiff also performs her personal care every few days.[37] The ALJ based her findings on Plaintiff's function reports, a third party function report from Plaintiff's stepmother, and Dr. Allen's report.[38]

In applying the substantial evidence standard, the Court cannot reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Given all that the ALJ reviewed and considered in her decision, the Court recommends that substantial evidence supports her finding that Plaintiff does not satisfy paragraph B under Listing 12.04.

---

[34] *Id.* at 19.

[35] Mild limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b).

[36] Dkt. No. 9-3 at 19.

[37] *Id.*

[38] *Id.*

Plaintiff argues that the ALJ engaged in "selective reading," "cherry-pick[ed]" portions of the evidence that supported her findings, and omitted evidence that contradicted her findings.[39] Plaintiff directs the Court to evidence where Plaintiff was emotional during an emergency room visit, where Plaintiff was anxious and guarded during examinations, and where Plaintiff explains that she struggles with her memory, thoughts, and attention.[40] The evidence referenced by Plaintiff does not contradict the ALJ's findings. The ALJ does not deny that Plaintiff suffers from depression and other physiological difficulties. *See Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015) ("[A] depression diagnosis is not, itself, a functional limitation."). To the contrary, the ALJ addressed Plaintiff's need for limitations in Plaintiff's RFC assessment.

Further, "the ALJ is not always required to do an exhaustive point-by-point discussion" of each piece of evidence at every step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see Charland v. Astrue*, No. 08-CV 1072, 2010 WL 624047, at *3 (N.D. Tex. Feb. 22, 2010) ("The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account[.]"). In fact, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it," *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005), and courts routinely decline to find reversible error when the ALJ explicitly states she considered the entire record in the decision. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does

---

[39] Dkt. No. 11 at 9–12; *see* Dkt. No. 14 at 2–5. Plaintiff also notes that the ALJ misstated findings from an October 2016 MSE. (Dkt. No. 11 at 9–10.) "[T]he ALJ also states that her impulse control was good, whereas it was noted as only 'fair' in the MSE. The ALJ also states that the claimant's concentration was normal, however, the claimant's attention was noted as impaired." (*Id.* at 10.) Even though the ALJ misstated the record, the error was harmless. *Morris v. Bowen*, 864 F. 2d 333, 334 (5th Cir. 1988) (finding harmless error when substantial evidence in the record supports the ALJ's decision).

[40] Dkt. No. 11 at 9–10.

not mean that he failed to consider all of the other evidence in the record. To the contrary, his decision states expressly that it was made '[a]fter careful consideration of all the evidence,' and we see no reason or evidence to dispute his assertion."); *Tyler v. Saul*, No. 19-CV-187, 2020 WL 4462527, at *4 (N.D. Tex. Aug. 4, 2020). Here, the ALJ stated multiple times that she considered all of the evidence in the record.[41]

The question at step three asks whether Plaintiff's limitations meet or equal a Listing. The criteria in the Listings are "demanding and stringent," *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994), and the amount of evidence considered by the ALJ is far "more than a mere scintilla." *Hardman*, 820 F.3d at 147. As such, the Court recommends that substantial evidence supports the ALJ's decision regarding Listing 12.04, paragraph B.

>    ii.   *Listing 12.04, paragraph C*

In her reply, Plaintiff also argues that she satisfies paragraph C under Listing 12.04.[42] The Court again agrees with Commissioner that substantial evidence supports the ALJ's findings that the evidence fails to satisfy paragraph C.

To satisfy paragraph C, Plaintiff would have to show "a medically documented history of the existence of the disorder over a period of at least 2 years" and evidence of both: (1) "[m]edical treatment, health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [her] mental disorder;" *and* (2) "[m]arginal adjustment, that is, [she has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life."

---

[41] Dkt. No. 9-3 at 17, 19, 22, 24.
[42] Dkt. No. 14 at 5.

Here, the ALJ found that the evidence failed to establish the presence of paragraph C criteria.[43] Plaintiff makes conclusory arguments as to how she satisfies paragraph C. For support, Plaintiff simply notes that she has attended group rehab and bi-weekly counseling sessions, and quotes a sentence from Dr. Allen's report regarding Plaintiff's difficulty in work environments.[44] This is insufficient to satisfy Plaintiff's burden of establishing that her impairment meets or equals the criteria for presumptive disability described in the Listings. *See Selders v. Sullivan*, 914 F.2d 614, 620 (5th Cir. 1990) (noting that the claimant failed to make the required showing of impairment needed to satisfy all of the criteria of a Listing, thereby concluding that substantial evidence supported the ALJ's finding that the required impairments for any Listing were not present). Thus, the Court recommends that substantial evidence supports the ALJ's findings that Plaintiff fails to satisfy paragraph C under Listing 12.04.[45]

### b.   The ALJ Properly Determined Plaintiff's RFC.

Plaintiff argues the ALJ erred in determining her RFC. Specifically, Plaintiff argues the limitations set by the ALJ do not account for Plaintiff's difficulties with her memory, her social limitations, and her ability to interact with others.[46] Further, Plaintiff argues that the ALJ wholly ignored her need for a walker, which she alleges she requires for ambulation.[47]

---

[43] Dkt. No. 9-3 at 19.

[44] Dkt. No. 14 at 5.

[45] In regards to Plaintiff's mental health treatment, Plaintiff argues the ALJ made inappropriate medical conclusions when discussing how Plaintiff handled her mental health treatment recommendations. (Dkt. No. 11 at 12–14; Dkt. No. 14 at 8.) In sum, Plaintiff's arguments are without merit. The ALJ neither made her own medical conclusions nor substituted her own opinion over a medical expert by reviewing the evidence and stating her findings. *See Bruson*, 387 F. App'x at 461 (impairments that reasonably can be remedied or controlled by medication or treatment are not disabling).

[46] Dkt. No. 11 at 15–16.

[47] *Id.* at 17.

Commissioner contends that the ALJ based her recommendation on "the credible medical, testimonial, and documentary evidence of record" and, in conjunction with Plaintiff's subjective complaints, appropriately determined Plaintiff could perform a modified range of light work.[48] The Court agrees with Commissioner.

In assessing Plaintiff's RFC, the ALJ found that she was capable of performing light work with additional postural and environmental restrictions.[49] As for Plaintiff's mental conditions, the ALJ added "out of an abundance of caution" that Plaintiff be restricted to "the ability to understand, remember, and carry out simple, repetitive, and routine tasks and instructions in order to accommodate her condition."[50]

The Court finds no error in the ALJ's RFC characterization. The ALJ considered all of the relevant evidence including but not limited to: (1) Dr. Rakiya Diallo's October 2016 internal medicine consultative examination; (2) Plaintiff's Parkland Hospital October 2016 emergency room visit; (3) Dallas Metrocare's MSE; (4) Dr. Allen's psychological consultative examination; (5) a January 2018 cervical spine CT scan and lumbar MRI; (6) Plaintiff's Parkland Hospital October 2017 visit; (7) a January 2018 cervical CT scan; (8) a March 2018 cervical examination; (9) Plaintiff's counseling and mental health treatment at Dallas Metrocare; (10) Plaintiff's stepmother's third party function report; (11) Plaintiff's multiple Global Assessment of Functioning ("GAF") scores; (12) the assessments of multiple State agency medical consultants; and (13) Plaintiff's own subjective complaints.[51]

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting

---

[48] Dkt. No. 13-1 at 8, 18.
[49] Dkt. No. 9-3 at 23.
[50] *Id.*
[51] *See id.* at 20–24.

effects of her symptoms were not entirely consistent with the medical and nonmedical evidence in the record.[52] Instead, the ALJ looked to and gave the State agency medical consultants' assessments of Plaintiff's RFC "some weight" because the ALJ found the assessments to be well supported and consistent with the medical evidence.[53] However, the ALJ still gave Plaintiff's subjective complaints "the greatest consideration reasonably supported by the evidence."[54]

The ALJ assigned little weight to the GAF scores, Plaintiff's stepmother's third party function report, and Dr. Allen's report.[55] Plaintiff takes issue with the ALJ's decision regarding Dr. Allen's report.[56] However, the ALJ explained that she found Dr. Allen's report to be "based too heavily on subjective reports" and inconsistent with Plaintiff's treatment history, the longitudinal record, and reported activities of Plaintiff's daily living.[57] The ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Moreover, the ALJ may determine the credibility of medical experts as well as lay witnesses in weighing their opinions and testimony accordingly. *Id.* Plaintiff's subjective complaints must be corroborated by objective medical evidence. *Wren v. Sullivan,* 925 F.2d 123, 129 (5th Cir. 1991). Thus, in regards to Dr. Allen's report, "the ALJ was justified in accepting the testimony and findings of some over others." *Britton v. Saul*, 827 F. App'x 426, 430 (5th Cir. 2020) (internal quotations omitted) (quoting *Pineda v. Astrue*, 289 F. App'x 710, 713 (5th Cir. 2008) (per curiam)).

As to the issue of the walker, Plaintiff argues she cannot ambulate effectively without a

---

[52] *Id.* at 22.
[53] *Id.* at 24.
[54] *Id.*
[55] *Id.* at 23–24.
[56] *See* Dkt. No. 11 at 10.
[57] Dkt. No. 8-3 at 23.

walker and the ALJ erred by not considering it in her RFC determination.[58] For support, Plaintiff points to one order from Parkland Hospital in October 2018 for a walker.[59] As Commissioner points out, the order form referenced by Plaintiff does not provide any further details on the use of the walker other than it was ordered for her by the hospital.[60] In October 2016, an internal medicine consultative exam noted Plaintiff ambulated without use of an assistive device.[61] Plaintiff argues this shows her condition has declined over the span of two years, but points to no other evidence to illustrate her inability to ambulate effectively without a walker.

During the November 2018 hearing, Plaintiff's attorney asked the VE whether a person who required the use of a cane "anytime she is standing" could perform any of the light jobs previously described in the hearing and the VE responded no.[62] However, there is no evidence that Plaintiff requires a cane or a walker "anytime she is standing." Plaintiff's attorney stated during the hearing that Plaintiff uses a cane for long distances,[63] which, the Court agrees with Commissioner, does not suggest Plaintiff requires a cane or walker at all times. Plaintiff's alleged inability to effectively ambulate without an assistive device is not supported by the medical evidence, Plaintiff fails to substantiate such a claim, and the Court recommends that the ALJ did not err by not considering a walker or cane in determining Plaintiff's RFC.

In reviewing the evidence and testimony, the Court recommends that substantial evidence supports the ALJ's RFC conclusion.

---

[58] Dkt. No. 11 at 17.
[59] *See* Dkt. No. 9-12 at 60.
[60] Dkt. No. 13-1 at 22.
[61] *See* Dkt. No. 9-8 at 44.
[62] Dkt. No. 9-3 at 59.
[63] *Id.* at 37.

### c.   There Was No Conflict For The ALJ To Resolve Regarding The VE's Testimony.

Plaintiff argues that the ALJ failed to resolve a conflict between the VE's testimony that Plaintiff could work as a laundry folder or assembler, which requires a reasoning level of at least 2, and the ALJ's finding that Plaintiff can only "understand, remember, and carry out only simple, repetitive, and routine tasks and instructions."[64] According to the Dictionary of Occupational Titles ("DOT"), a reasoning level of at least 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."

Commissioner contends there is no conflict between the VE's testimony and the ALJ's findings because a person limited to simple tasks does not automatically rule out jobs that may require up to a level two reasoning ability.[65] The Court agrees with Commissioner.

"A number of district courts within the Fifth Circuit . . . have already determined that there is no direct or apparent conflict between an RFC limiting a plaintiff to 'simple' instructions and a VE's testimony that a plaintiff may perform work at a reasoning level of two." *Smith v. Colvin*, No. 313-CV-1884, 2014 WL 1407437, at *6 (N.D. Tex. Mar. 24, 2014), report and recommendation adopted, No. 3:13-CV-1884-N, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014). Thus, the case law "supports a determination that a limitation to 'simple, repetitive, and routine tasks' could support work with a reasoning level of two or three." *Id.* Further, the DOT only describes the *maximum* job requirements for each occupation and it is possible the jobs identified by VEs are not as demanding. *See* SSR 00-4p, 2000 WL 1898704, *3.

Therefore, the Court recommends that there was no conflict that the ALJ was required to resolve in the VE's testimony.

---

[64] *See* Dkt. No. 11 at 14.
[65] Dkt. No. 13-1 at 19–20.

### d. The ALJ Properly Characterized Plaintiff's Age Classification.

Plaintiff argues the ALJ erred by mechanically applying the age categories and placing Plaintiff in the "closely approaching advanced age" category rather than the "advanced age" category.[66] Commissioner contends a borderline age situation was not present and the ALJ properly characterized Plaintiff's age classification.[67] The Court agrees with Commissioner.

At the fifth step of the evaluation process, the ALJ considers Plaintiff's age as one of the relevant vocational factors. *See* 20 C.F.R. § 404.1563(a). A plaintiff can be classified in one of three categories: (1) younger person (18–49); (2) a person closely approaching advanced age (50–54); or (3) a person of advanced age (55 or older). *See* § 404.1563(c)-(e). The regulations also mention the possibility of a "borderline" situation, which is not specifically defined either by statute or by the governing regulation, where the Commissioner will consider applying an older age category if a plaintiff is "within a few days to a few months of reaching an older age category." *See* 20 C.F.R. § 404.1563(b).

The Fifth Circuit has not directly addressed the meaning of "within a few days to a few months," but it has repeatedly held that the Commissioner has significant discretion when determining whether a situation is borderline. *See Stanridge–Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506, at * 1 (5th Cir. Apr. 24, 2001) (per curiam); *Skinner v. Shalala*, 47 F.3d 424, 1995 WL 71092, at *5 (5th Cir. Jan. 25, 1995) (per curiam); *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988); *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987). While the ALJ has discretion to determine which age category a plaintiff falls under, a number of courts have found that plaintiffs may be considered in a "borderline situation" when they are up to six months away

---

[66] Dkt. No. 11 at 18–19; Dkt. No. 14 at 11.
[67] Dkt. No. 13-1 at 23–24.

from a birthday that would place them in the next older category. *See Jackson v. Colvin*, 240 F.Supp.3d 593, 600 (E.D. Tex. 2017) (observing that "a growing number of courts appear to hold that a claimant within six (6) months of an older age category present a borderline age situation"); *see also Fontenot v. Colvin*, 661 F. App'x 274, 277 n.1 (5th Cir. 2016) (per curiam) ("According to the agency manual, a few months should mean 'a period not to exceed six months.'").

Here, Plaintiff was exactly six months and thirteen days from her 55th birthday at the time of the ALJ's decision.[68] As this is more than six months, the ALJ placed Plaintiff in the closely approaching age category rather than the advanced age category.[69] The Court recognizes, as does Plaintiff, that she was just two weeks shy of being within the six month window. However, "[t]here is no obvious inconsistency between an interpretation of less than six months and language calling for 'a few days to a few months,' so [the ALJ's decision] is entitled to deference." *Fontenot*, 661 F. App'x at 277 n.1; *see Harrell*, 862 F.2d at 479. Further, while the Court recognizes Plaintiff's case presents a close call, it "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Audler*, 501 F.3d at 447. As such, the Court recommends that no reversible error occurred.[70]

### e.  The ALJ Properly Considered And Weighed All Of The Evidence.

Plaintiff argues the ALJ did not consider all required factors when assigning weight to medical opinions and erred in affording more weight to the opinions of State agency consultants.[71] Specifically, Plaintiff takes issue with the fact that the ALJ assigned "little weight" to Dr. Allen's

---

[68] *See* Dkt. No. 14 at 11.

[69] *See* Dkt. No. 9-3 at 24.

[70] Because Plaintiff was not a "few months" from reaching an older age category, the question of whether "using the older age category would result in a determination or decision that [Plaintiff is] disabled" is not reached. 20 C.F.R. § 404.1563(b).

[71] Dkt. No. 11 at 19.

report and Plaintiff's stepmother's report and that the ALJ assigned "some weight" to the State agency medical consultants reports.[72] Commissioner contends the ALJ assigned the appropriate weight to the considered opinions.[73] The Court agrees with Commissioner.

Beginning with Dr. Allen's report, the ALJ assigned it "little weight."[74] To be clear, Dr. Allen, a consultative examining physician, is considered a nontreating source.[75] *See Andrews v. Astrue*, 917 F.Supp.2d 624, 637 (N.D. Tex. 2013) (noting that a consultative examiner is a nontreating source and is not required controlling weight by an ALJ). With nontreating sources' opinions, an ALJ is free to incorporate only those limitations that she finds "consistent with the weight of the evidence as a whole." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (per curiam). An ALJ must, however, explain in the decision the weight given to the opinions of nontreating and other nonexamining sources. *See Andrews*, 917 F.Supp.2d at 638. Here, the ALJ explained that she found Dr. Allen's report too heavily based on subjective reports and not consistent with the treatment history, the longitudinal record, or Plaintiff's reported activities of daily living.[76] Having explained her decision, the Court recommends the ALJ did not err in assigning Dr. Allen's report little weight.

Turning to the State agency medical consultants, the ALJ assigned these opinions "some

---

[72] *See id.* at 20–21.

[73] Dkt. No. 13-1 at 15–17.

[74] Dkt. No. 9-3 at 23.

[75] Dkt. No. 11 at 20. A "nontreating source" is a "physician, psychologist, or other acceptable medical source who has examined [a claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. Seeing a plaintiff on one occasion would not qualify as an ongoing treatment relationship. *See Richardson ex rel. C.R. v. Barnhart*, 338 F. Supp. 2d 749, 759 (S.D. Tex. 2004) (finding that "one-time visits" to physicians did not constitute the ongoing treatment required to categorize physicians as treating physicians). Thus, Dr. Allen was not a treating source and the ALJ was not required to give Dr. Allen's report controlling weight. *See* 20 C.F.R. § 416.927.

[76] Dkt. No. 9-3 at 23.

weight."[77] Just as with Dr. Allen's report, the ALJ was required to explain the reasoning behind her decision. *Id.* In reviewing the four separate reports, the ALJ explained that she found the assessments of Plaintiff's functional capacity to be "well supported and [ ] not inconsistent with the medical evidence."[78] Having explained her decision, the Court recommends the ALJ did not err in assigning the State agency medical consultants' assessments some weight.

Plaintiff argues the ALJ's decision to give more weight to the State agency consultants' assessments than Dr. Allen's report is inappropriate because Dr. Allen met with Plaintiff and the State agency consultants did not.[79] 20 C.F.R. § 404.1527(c)(1) states that, "[g]enerally . . . more weight [is given] to the opinion of a source who has examined you than to the opinion of a source who has not examined you." However, the ALJ explicitly stated that she found Dr. Allen's report to be heavily based on subjective reports and at odds with the objective evidence.[80] Subjective complaints must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Conversely, the ALJ found the opposite when considering the State agency consultants' assessments. It is not the Court's job to substitute its judgment for that of the ALJ. *See Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008). Thus, the Court recommends that the ALJ did not err in deciding to give more weight to the State agency consultants' assessments than Dr. Allen's report.

Lastly, Plaintiff takes issues with the third party function report by Plaintiff's stepmother, which the ALJ assigned "little weight."[81] Plaintiff argues the ALJ provides no explanation as to

---

[77] *Id.* at 24.
[78] *Id.*
[79] Dkt. No. 11 at 21.
[80] Dkt. No. 9-3 at 23.
[81] Dkt. No. 11 at 21.

her decision. Further, Plaintiff notes that the ALJ repeatedly cited to the third party function report in her decision and argues that the ALJ should not be able to justify important determinations with using a report that the ALJ herself gave "little weight."[82]

First, while an ALJ cannot simply reject a medical opinion without explanation, the Court notes that the third party function report by Plaintiff's stepmother was not a medical opinion. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). "The ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *Ramirez v. Colvin*, 606 F. App'x 775, 779 (5th Cir. 2015) (quoting *Scott*, 770 F.2d at 485). The Court recognizes Plaintiff's frustration: the ALJ gave the third party function report little weight, used it for support throughout her analysis at step three,[83] and then failed to provide an explanation regarding the weight decision. However, any error by the ALJ regarding the weight given to the third party function report is harmless because a different result would not have occurred absent the error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error standard in Social Security case)); *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) (holding that to establish an error warranting remand, a plaintiff bears the burden of demonstrating that it is possible that a different result would occur absent the error).

The Court recommends that the ALJ properly considered, summarized, and weighed all of the evidence. Ultimately, the Court is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and the Court recommends that it is here.

---

[82] *Id.* at 22.

[83] The ALJ repeatedly references the third party function report at step three in considering whether Plaintiff equaled a listing. (*See* Dkt. No. 9-3 at 18–19.)

IV.    **CONCLUSION**

Based on the foregoing, the Court the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and the action be **DISMISSED** with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on January 20, 2021.

Sam S. Sheldon
United States Magistrate Judge

23 / 23